UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ALLISON BURKS**

      **PLAINTIFF,**

vs.　　　　　　　　　　　　　　**CASE NO.:**

**Highmark Residential, LLC aka Milestone Management, LLC d/b/a Summit at Metrowest Apartments And MREI III Metrowest, LLC d/b/a Summit at Metrowest Apartments**

      **Defendants**

_____/

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, ALLISON BURKS by and through her undersigned counsel,

Sues Defendant, **Highmark Residential, LLC aka Milestone Management, LLC d/b/a Summit at Metrowest Apartments** ("Defendant" or "Highmark") and **MREI III Metrowest, LLC d/b/a Summit at Metrowest Apartments** and states:

**GENERAL ALLEGATIONS**

1. This is an action for damages brought against the Defendants pursuant to Chapter 57 of the Code of the City of Orlando, specifically, § 57.36 et seq., The Florida Fair Housing Act—specifically, Sections 760.23(1), 760.23(2), 760.23(8) and (9)(b) Florida Statutes and the Federal Fair Housing Act ("FHA")—Specifically, 42 U.S.C Sections 3601-3603, 3604, 3613 and 3615. This Court has original, concurrent, and subject matter jurisdiction pursuant to article III, section 1 of the U.S. Constitution, 28 U.S.C. sections 1331, 1332 and 1343 and Florida Constitution.

2. Plaintiff, ALLISON BURKS (hereinafter "Plaintiff" or "BURKS") was a resident of

Orange County, Florida and the conduct complained of herein occurred in Orange County, and within the Orlando City limits.

3. At all times material, Defendant **Highmark Residential, LLC d/b/a Summit at Metrowest** was a business entity operating throughout the United States whose principal address is 5429 LBJ Freeway, Suite 800, Dallas, TX 75240 and was authorized to do business in the State of Florida and is/was doing business in the State of Florida or was a foreign business authorized and doing business in the State of Florida. Defendant HIGHMARK is a residential apartment /complex management company and Summit at Metrowest Apartments was operated, managed and controlled by the Defendant HIGHMARK and HIGHMARK were responsible for the actions of their employees, representatives or agents.

4. At all times material, Defendant **MREI III Metrowest, LLC d/b/a Summit at Metrowest Apartments** was a business entity in the State of Florida and was authorized to do business in the State of Florida and is/was doing business in the State of Florida or was a foreign business authorized and doing business in the State of Florida. Defendant MREI III Metrowest, LLC d/b/a Summit at Metrowest Apartments was the owner of the subject residential apartment complex and operated, managed and controlled Summit at Metrowest and were responsible for the actions of their employees, representatives or agents and/or hired, retained or contracted with HIGHMARK to operate and manage Hatteras Sound Apartments.

5. BURKS has complied with all conditions precedent for the filing of this lawsuit, including filing the appropriate charge of discrimination with the City of Orlando, HUD and Florida Commission on Human Relations.

**FACTUAL ALLEGATIONS**

6. BURKS is handicapped or has a disability and has a rare Sensory Processing Disorder/Impairment in that she is unable to tolerate loud, repetitive, constant, deafening, banging or noises as these events causes and results, among other things, in excruciating, debilitating pain; physically, emotionally and psychologically pain, to the point where she can be rendered unable to function, limitations which substantially limits or impairs a major and fundamental life activity, to wit, her ability to function and engage in any major life activities, instead she becomes incapacitated, requiring bed confinement and medication.

7. At all times material to this action, BURKS was a resident at the Defendants' apartments Summit at Metrowest Apartments and resided at 6410 Metrowest Blvd., Apt. 1113, Orlando, FL 32835.

8. In order to receive and enjoy the full terms, conditions, privileges, or services and facilities of the premised and property in which she resided, upon moving into Summit at Metrowest Apartment in March of 2020, Plaintiff provided management with notice and/or informed management of her impairment and requested not to be place in an apartment where noise levels would be heightened. Again, in June of 2020, in a written noise complaint, Plaintiff provided management with notice and/or informed management of her impairment and need for a reasonable accommodation, which was merely to assist in keeping noise levels down.

9. In February of 2021, one or more of Plaintiff's downstairs neighbors began using their garage(s) and the area immediately outside and near the garage(s) as a "commercial

body shop", "repair shop" or "commercial mechanics garage." These neighbors were operating heavy and loud machinery, air compressors, drills, electric-jack hammers, and a host of other loud machinery immediately below and near Plaintiff's apartment. In fact, the noise was so loud and deafening it often rattled her apartment, the windows, and caused reverberations throughout her apartment resulting in excruciating and debilitating pain, both physically and psychologically to Plaintiff.

10. Around mid to late February 2021, Plaintiff began calling the leasing office 2 to 3 times a week asking management to reasonably accommodate Plaintiff by enforcing its own rules regarding the use of garages due to excessive noise. Because no one answered the phone, which appeared to be standard, Plaintiff left several messages detailing the extent of the noise and the destructive effect it was having on her impairment(s) and psychological / emotional health.

11. Moreover, Plaintiff asked verbally on several occasions around mid to late February 2021 to be contacted so that any possible accommodation could be discussed, whether it be her own transfer, a simple civil notice to the renters, or a revocation of their privileges. After weeks of verbally requesting accommodation and being ignored by staff, Plaintiff began to question whether her neighbors' behavior was even against the provider's rules, so Plaintiff emailed staff on 02/28/2021 an inquiry about whether the activity was permitted. To this end, as a reasonable accommodation, Plaintiff was merely asking management/Defendant to enforce its own rules.

12. After weeks of verbally requesting accommodation and being ignored by staff, and management was ignoring her complaints about the commercial use of the garage(s) below

and near her apartment, Plaintiff emailed staff on 02/28/2021 and inquired about whether the activity was permitted, to wit, operating a "commercial garage" or "mechanic's shop" out of a residential garage. Again, Plaintiff received no response/reply.

13. After Plaintiff did not receive a response and as the noises under her bedroom continued to worsen (and obliterate her mentally with no end in sight), she followed up with a more specific email which included the Community Director, Assistant Community Director, and all leasing staff on 03/02/2021 that: **1)** described—again—that the garage below her bedroom was actively being used for (i.e. a carpentry business, workshop, grill area, party space) and **2)** inquired in writing about whether this activity was permitted. By this time, staff had ignored Plaintiff's calls and messages for weeks and were fully aware Plaintiff was emailing regarding the numerous voicemails she had left related to her impairment/disability.

14. That same day, 03/02/2021, Plaintiff finally received an email response from Assistant Director, Karla, acknowledging the prohibited noise but never any of her many disability-related calls / voicemails, and she stated in her email that "*Garages are only to store vehicles. If we see or hear of any reports of misuse, we are allowed to 7-day and terminate use of the garage.*" She also attached a copy of their Garage Addendum which prohibited such use. Because management had recognized / acknowledged the prohibited, excruciating noise at that time emanating from the garage, Plaintiff was under the impression she would finally be reasonably accommodated by the property's enforcement of its own rules. However, she was not.

15. Indeed, management did nothing to stop the noise or use of the garage as a

"mechanic's shop" for weeks. In fact, in an effort to cope with the noise and dimmish the effects Plaintiff again requested a reasonable accommodation to cope with the noise by requesting a "comfort animal" on March 3, 2021, again, via letter from her therapist, and that too was denied by management/Defendant.

16. Despite management's "acknowledgement" and Plaintiff's many sincere attempts at being accommodated, the noise under her bedroom progressively worsened to a point that 03/24/21, Plaintiff was required supplemental medication. Due to the prolonged disregard and lack of assistance from staff, Plaintiff coped with the noise and circumstances since then with medication and in every way possible until it became psychologically intolerable, and until another written reasonable accommodation request was delivered to Community Director on 04/21/2021. Moreover, this request merely asked "(a) To be relocated to the 3rd Floor, or a unit without an adjacent garage or (b) To be relocated to the 3rd Floor, or a unit without an upstairs neighbor". Although there were apartments available which would have satisfied these requests, this request was also ignored/denied, as has been most of Plaintiff's other correspondence regarding her disability/impairment(s).

17. In fact, as to the April 21, 2021, request for a reasonable accommodation, Plaintiff did not even receive a response/reply until May 4, 2021, which was almost three (3) weeks after she requested the accommodation and after Plaintiff has filed her complaint with the City on April 30, 2021, and notified Defendant(s) of the same. Moreover, as late as August of 2021 Plaintiff was still having to endure and tolerate the loud unbearable noises. Of equal importance, by the time Defendants, particularly HIGHMARK decided to provide a

reasonable accommodation to Plaintiff, as opposed to enforcing their own rules, or terminating the lease of the violators, Defendant offered options which were not reasonable at all as the alternative apartment units were located in area which would exacerbate Plaintiff's condition, and Defendant sought to charge Plaintiff a higher rent for these units.

18. Defendants are responsible for the conduct and actions of their employees, managers and representatives and were required to and had a legal duty and obligation to engage in non-discriminatory conduct vis-à-vis Plaintiff and failed and refused to do. Instead, Defendant acted in a manner so as to discrimination against Plaintiff due to her disability and deprive her of her rights under applicable law. As a result of the discriminatory conduct of the Defendants, PLAINTIFF has sustained damages and continues to sustain damages.

## COUNT I- FHA VIOLATIONS AGAINST-Highmark Residential, LLC
## ("Direct Disability Discrimination")

19. BURKS repeats, re-alleges and incorporates paragraphs 1-18 set forth above.

20. BURKS has exhausted her administrative remedies as described in paragraph 5 above and therefore all conditions precedent to filing suit under the FHA, have been met.

21. The FHA prohibits discrimination on the basis of disability in all programs, services, privileges, benefits and activities provided by or made available by public entities, including the provision of housing and related services. Defendant is a public entity or provide housing to the public under the FHA. The FHA requires "reasonable accommodation" be made when requested by a qualified person with a disability.

22. BURKS is a member of a protected class in that she is handicapped, disabled, or suffers from a disability as defined in or by the FHA; to this end, BURKS has a severe and significant sensory and neuro psychological impairment which substantially limits or impairs a major and fundamental life activity and renders her unable to do many major life activities. Additionally, BURKS has a record of being impaired or handicapped or is regarded as being impaired or handicapped and said impairment substantially limits one or more major life activities. Defendant violated the FHA in that Defendant discriminated against Plaintiff by (1) denying her or delaying her a reasonable accommodation due to his disability, handicap or impairment and/or (2) by refusing to and/or failing to offer Plaintiff any type of reasonable accommodation, even though the reasonable accommodation(s) sought by Plaintiff would have placed no burden whatsoever on Defendant.

23. Defendant was a provider of public or residential housing and was required by law to provide Plaintiff with a reasonable accommodation and provide Plaintiff the ability to enjoy the full terms, conditions, privileges, or services and facilities of the premised and property in which she resided within the meaning of the FHA. In fact, the FHA requires owners of housing facilities to make reasonable exceptions in their policies and operations to afford people with disabilities equal housing opportunities.

24. As a direct and proximate result of the aforementioned violations, BURKS has suffered loss of benefits, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life and home, emotional pain and suffering, and severe emotional distress and anguish.

WHEREFORE, BURKS demands the following relief: compensatory damages, attorney's fees, and costs pursuant to the FHA, a trial by jury and any other relief this court deems just and proper.

## COUNT II- FHA VIOLATIONS AGAINST- MREI III Metrowest, LLC
## ("Direct Disability Discrimination")

25. BURKS repeats, re-alleges and incorporates paragraphs 1-18 set forth above.

26. BURKS has exhausted her administrative remedies as described in paragraph 5 above and therefore all conditions precedent to filing suit under the FHA, have been met.

27. The FHA prohibits discrimination on the basis of disability in all programs, services, privileges, benefits and activities provided by or made available by public entities, including the provision of housing and related services. Defendant is a public entity or provide housing to the public under the FHA. The FHA requires "reasonable accommodation" be made when requested by a qualified person with a disability.

28. BURKS is a member of a protected class in that she is handicapped, disabled, or suffers from a disability as defined in or by the FHA; to this end, BURKS has a severe and significant sensory and neuro psychological impairment which substantially limits or impairs a major and fundamental life activity and renders her unable to do many major life activities. Additionally, BURKS has a record of being impaired or handicapped or is regarded as being impaired or handicapped and said impairment substantially limits one or more major life activities. Defendant violated the FHA in that Defendant discriminated against Plaintiff by (1) denying her or delaying her a reasonable accommodation due to his

disability, handicap or impairment and/or (2) by refusing to and/or failing to offer Plaintiff any type of reasonable accommodation, even though the reasonable accommodation(s) sought by Plaintiff would have placed no burden whatsoever on Defendant.

29. Defendant was a provider of public or residential housing and was required by law to provide Plaintiff with a reasonable accommodation and provide Plaintiff the ability to enjoy the full terms, conditions, privileges, or services and facilities of the premised and property in which she resided within the meaning of the FHA. In fact, the FHA requires owners of housing facilities to make reasonable exceptions in their policies and operations to afford people with disabilities equal housing opportunities.

30. As a direct and proximate result of the aforementioned violations, BURKS has suffered loss of benefits, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life and home, emotional pain and suffering, and severe emotional distress and anguish.

WHEREFORE, BURKS demands the following relief: compensatory damages, attorney's fees, and costs pursuant to the FHA, a trial by jury and any other relief this court deems just and proper.

**COUNT III- FCRA 760.01 VIOLATIONS AGAINST-Highmark Residential, LLC**

**("Direct Disability Discrimination")**

31. BURKS repeats, re-alleges and incorporates paragraphs 1-18 set forth above.

32. BURKS has exhausted his administrative remedies as described in paragraph 5 above and therefore all conditions precedent to filing suit under the FCRA, have been

met.

33. The FCRA prohibits discrimination on the basis of disability in all programs, services, privileges, benefits and activities provided by or made available by public entities, including the provision of housing and related services. Defendant is a public entity or provide housing to the public under the FCRA. The FCRA requires "reasonable accommodation" be made when requested by a qualified person with a disability.

34. BURKSs is a member of a protected class in that she is handicapped, disabled, or suffers from a disability as defined in or by the FCRA; to this end, BURKS has a severe and significant sensory and/or neuro psychological impairment which substantially limits or impairs a major and fundamental life activity and renders her unable to do many major life activities. Additionally, BURKS has a record of being impaired or handicapped or is regarded as being impaired or handicapped and said impairment substantially limits one or more major life activities. Defendant violated the FCRA in that Defendant discriminated against Plaintiff by (1) denying him or delaying her a reasonable accommodation due to his disability, handicap or impairment and/or (2) by refusing to and/or failing to offer Plaintiff any type of reasonable accommodation, even though the reasonable accommodation(s) sought by Plaintiff would have placed no burden whatsoever on Defendant.

35. Defendant was a provider of public or residential housing and was required by law to provide Plaintiff with a reasonable accommodation and provide Plaintiff the ability to enjoy the full terms, conditions, privileges, or services and facilities of the

premised and property in which he resided within the meaning of the FCRA.

36. As a direct and proximate result of the aforementioned violations, BURKS has suffered loss of benefits, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life and home, emotional pain and suffering, and severe emotional distress and anguish.

WHEREFORE, BURKS demands the following relief: compensatory damages, attorney's fees, and costs pursuant to the FCRA, a trial by jury and any other relief this court deems just and proper.

**COUNT IV- FCRA 760.01 VIOLATIONS AGAINST- MREI III Metrowest, LLC**

**("Direct Disability Discrimination")**

37. BURKS repeats, re-alleges and incorporates paragraphs 1-18 set forth above.

38. BURKS has exhausted his administrative remedies as described in paragraph 5 above and therefore all conditions precedent to filing suit under the FCRA, have been met.

39. The FCRA prohibits discrimination on the basis of disability in all programs, services, privileges, benefits and activities provided by or made available by public entities, including the provision of housing and related services. Defendant is a public entity or provide housing to the public under the FCRA. The FCRA requires "reasonable accommodation" be made when requested by a qualified person with a disability.

40. BURKSs is a member of a protected class in that she is handicapped, disabled, or suffers from a disability as defined in or by the FCRA; to this end, BURKS has a severe and significant sensory and/or neuro psychological impairment which substantially limits or

impairs a major and fundamental life activity and renders her unable to do many major life activities. Additionally, BURKS has a record of being impaired or handicapped or is regarded as being impaired or handicapped and said impairment substantially limits one or more major life activities. Defendant violated the FCRA in that Defendant discriminated against Plaintiff by (1) denying him or delaying her a reasonable accommodation due to his disability, handicap or impairment and/or (2) by refusing to and/or failing to offer Plaintiff any type of reasonable accommodation, even though the reasonable accommodation(s) sought by Plaintiff would have placed no burden whatsoever on Defendant.

41.     Defendant was a provider of public or residential housing and was required by law to provide Plaintiff with a reasonable accommodation and provide Plaintiff the ability to enjoy the full terms, conditions, privileges, or services and facilities of the premised and property in which he resided within the meaning of the FCRA.

42.     As a direct and proximate result of the aforementioned violations, BURKS has suffered loss of benefits, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life and home, emotional pain and suffering, and severe emotional distress and anguish.

WHEREFORE, BURKS demands the following relief: compensatory damages, attorney's fees, and costs pursuant to the FCRA, a trial by jury and any other relief this court deems just and proper.

## COUNT V- CHAPTER 57 VIOLATIONS AGAINST-Highmark Residential, LLC

## ("Direct Disability Discrimination")

43.     BURKS repeats, re-alleges and incorporates paragraphs 1-18 set forth above.

44.     BURKS has exhausted his administrative remedies as described in paragraph 5 above and therefore all conditions precedent to filing suit under the Chapter 57 of the Code of the City of Orlando, specifically, § 57.36 et seq., (herein "Chapter 57") have been met.

45.     Chapter 57 prohibits discrimination on the basis of disability in all programs, services, privileges, benefits and activities provided by or made available by public entities, including the provision of housing and related services within the limits of the City of Orlando. Defendant is a public entity or provide housing to the public under Chapter 57 and was operating with the Orlando city limits. Chapter 57 requires "reasonable accommodation" be made when requested by a qualified person with a disability.

46.     BURKSs is a member of a protected class in that she is handicapped, disabled, or suffers from a disability as defined in or by Chapter 57; to this end, BURKS has a severe and significant sensory and/or neuro psychological impairment which substantially limits or impairs a major and fundamental life activity and renders her unable to do many major life activities. Additionally, BURKS has a record of being impaired or handicapped or is regarded as being impaired or handicapped and said impairment substantially limits one or more major life activities. Defendant violated Chapter 57 in that Defendant discriminated against Plaintiff by (1) denying him or delaying her a reasonable accommodation due to his disability, handicap or impairment and/or (2) by refusing to

and/or failing to offer Plaintiff any type of reasonable accommodation, even though the reasonable accommodation(s) sought by Plaintiff would have placed no burden whatsoever on Defendant.

47. Defendant was a provider of public or residential housing and was required by law to provide Plaintiff with a reasonable accommodation and provide Plaintiff the ability to enjoy the full terms, conditions, privileges, or services and facilities of the premised and property in which he resided within the meaning of Chapter 57.

48. As a direct and proximate result of the aforementioned violations, BURKS has suffered loss of benefits, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life and home, emotional pain and suffering, and severe emotional distress and anguish.

WHEREFORE, BURKS demands the following relief: compensatory damages, attorney's fees, and costs pursuant to Chapter 57, a trial by jury and any other relief this court deems just and proper.

**COUNT VI- CHAPTER 57  VIOLATIONS AGAINST- MREI III Metrowest, LLC**
**("Direct Disability Discrimination")**

49. BURKS repeats, re-alleges and incorporates paragraphs 1-18 set forth above.

50. BURKS has exhausted his administrative remedies as described in paragraph 5 above and therefore all conditions precedent to filing suit under the Chapter 57 of the Code of the City of Orlando, specifically, § 57.36 et seq., (herein "Chapter 57") have been met.

51. Chapter 57 prohibits discrimination on the basis of disability in all programs,

services, privileges, benefits and activities provided by or made available by public entities, including the provision of housing and related services within the limits of the City of Orlando. Defendant is a public entity or provide housing to the public under Chapter 57 and was operating with the Orlando city limits. Chapter 57 requires "reasonable accommodation" be made when requested by a qualified person with a disability.

52. BURKSs is a member of a protected class in that she is handicapped, disabled, or suffers from a disability as defined in or by Chapter 57; to this end, BURKS has a severe and significant sensory and/or neuro psychological impairment which substantially limits or impairs a major and fundamental life activity and renders her unable to do many major life activities. Additionally, BURKS has a record of being impaired or handicapped or is regarded as being impaired or handicapped and said impairment substantially limits one or more major life activities. Defendant violated Chapter 57 in that Defendant discriminated against Plaintiff by (1) denying him or delaying her a reasonable accommodation due to his disability, handicap or impairment and/or (2) by refusing to and/or failing to offer Plaintiff any type of reasonable accommodation, even though the reasonable accommodation(s) sought by Plaintiff would have placed no burden whatsoever on Defendant.

53. Defendant was a provider of public or residential housing and was required by law to provide Plaintiff with a reasonable accommodation and provide Plaintiff the ability to enjoy the full terms, conditions, privileges, or services and facilities of the premised and property in which he resided within the meaning of Chapter 57.

54. As a direct and proximate result of the aforementioned violations, BURKS has

suffered loss of benefits, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life and home, emotional pain and suffering, and severe emotional distress and anguish.

WHEREFORE, BURKS demands the following relief: compensatory damages, attorney's fees, and costs pursuant to Chapter 57, a trial by jury and any other relief this court deems just and proper.

On this 5th Day of May 2022.

                                                S/ Frank T. Allen
                                                FRANK T. ALLEN, ESQUIRE
                                                FBN- 0033464
                                                **THE ALLEN FIRM, P.A.**
                                                2582 Maguire Rd.,
                                                Suite 130
                                                OCOEE, FL 347611
                                                (407) 481-8103
                                                Fallen@TheAllenFirmPA.com (email)
                                                Attorneys for Plaintiff.

                                                _____ (attached)
                                                    ALLISON BURKS